[No. 27715. Department One. May 9, 1940.]

THE FIRST NATIONAL BANK OF CHICAGO, as Trustee, Appellant, v. KING COUNTY, Respondent.[1]

Allen, Froude & Hilen, for appellant.

B. Gray Warner and Lloyd W. Shorett, for respondent.

[1]Reported in 102 P. (2d) 263.

MILLARD, J.—The First National Bank of Chicago, a foreign corporation, as trustee under a first mortgage executed by the Seattle and Rainier Valley Railway Company, brought an action in the superior court for King county against that railway company for foreclosure of the mortgage. A decree was entered February 25, 1937, foreclosing the mortgage and directing the sheriff to sell the real and personal property of the railway company in satisfaction of the judgment.

Pursuant to the decree, the personal property of the railway company, subject to the mortgage, was sold March 12, 1937, for $72,800, which money was paid by the purchaser to the sheriff of King county, who, in turn, paid same to the clerk of the superior court for King county to be applied in satisfaction of the judgment in the foreclosure proceeding in the amount of $491,000, plus certain costs.

Prior to the entry of the foreclosure decree of February 25, 1937, the treasurer for King county had distrained all the personal property of the railway company for the personal property taxes due for the years 1932 to 1936, inclusive, and was proceeding to sell same. Subsequent to the entry of the judgment and decree of foreclosure but prior to the sheriff's sale, one of the attorneys for the trustee bank and the treasurer of King county discussed the subject of claimed delinquent personal property taxes. The evidence is in conflict as to what was said by the parties to these discussions; however, there is evidence to sustain the finding that the parties agreed that, if the county treasurer permitted the property of the railway company to be sold by the mortgagee, the mortgagee would first pay out of the proceeds the personal property taxes to King county due on that property for the years 1932 to 1936, inclusive. The county treasurer testified that the sale could either have been held by the sheriff or by the

county treasurer, and that the understanding upon which the parties finally agreed was that the sheriff would be permitted to hold the sale provided the county treasurer was notified when the money was received and the treasurer authorized to distrain that money; that, otherwise, he would have sold it himself. The treasurer further testified that one of counsel for the trustee bank

". . . agreed that the sale would be subject to the taxes. In other words, I had the right to have my man there and say 'This property will be sold for the taxes.' To avoid that, Mr. Froude agreed that I might follow the proceeds of the sale, so that he wouldn't have to notify the bidders at the sale that it was sold subject to the taxes."

Pursuant to the agreement, the county treasurer postponed the sale for delinquent taxes and permitted the trustee bank to proceed with its sale of the property of the railway company.

On March 12, 1937, the sum of $72,800, which was realized from the sale of the properties of the railway company, was paid by the sheriff to the clerk of the superior court for King county. On the same date, the treasurer for King county demanded that, of the amount of $72,800 in the hands of the county clerk, the personal property taxes owing King county be paid out of that money. On March 20, 1937, one of counsel for the trustee bank presented to the superior court for King county an order, which the court signed, directing the clerk of the superior court for King county to pay to the county treasurer for King county $46,-224.75 from the proceeds of the sale of the property of the railway company then in the register of the court in payment of taxes due from the railway company to King county for the years 1932 to 1936, inclusive.

That order provides,

"It Is Hereby Ordered, Adjudged, and Decreed as follows:

"1. That the Clerk of the above entitled court be and he is hereby ordered and directed to forthwith pay to Ralph S. Stacy, Treasurer of King County, out of the money in the Registry of the Court above referred to and upon which notice of distraint was given by Ralph S. Stacy, County Treasurer of King County, Washington, the following sums: [Here followed statement of amount of taxes due for . . . the years 1932 to 1936 inclusive.]

"It Is Further Ordered that this is without prejudice to the right of the plaintiff to maintain any action or actions to recover all or any part of the foregoing sums."

Pursuant to that order, the clerk of King county paid to the treasurer of King county the money demanded, and paid the remainder over to the attorneys for the trustee bank.

At the time of the entry of the above order and payment of the taxes to the treasurer for King county from the fund in the hands of the clerk for King county, no written protest or claim was served upon or filed with the treasurer for King county by the trustee bank. On May 17, 1937, the trustee bank filed a claim, which is the only protest or claim ever served or filed against King county, with the board of county commissioners in the amount of $46,224.75 and interest thereon on account of the alleged wrongful taking, by the King county treasurer, of the money from the clerk of the court. That claim was not allowed.

The trustee bank instituted an action against King county for the recovery of the amount of money paid by the clerk of the superior court to the treasurer of King county, on the ground that the assessment or levy of taxes against the property of the railway company was invalid, in that the assessment of the prop-

erty was made by the state tax commission and there was no record of any listing for assessment or any assessment for taxation by the assessor for King county. The second ground on which the plaintiff relies for recovery is that the respondent could not validly collect such taxes, even though legally assessed, from the proceeds of a foreclosure sale under plaintiff's mortgage.

Trial of the cause to the court resulted in findings of fact and conclusions of law in favor of the defendant. From the judgment of dismissal, plaintiff appealed.

Determinative of this appeal is the fact that the taxes were paid voluntarily and without any written protest. The taxes were paid under authority of an *ex parte* court order, presented by one of appellant mortgagee's attorneys, which order does not recite any reason for the claimed invalidity of the taxes, but does contain reservation to appellant mortgagee of the right to bring an action to recover all or any part of the taxes.

The parties do not agree as to the reasons which prompted payment of the proceeds of the sheriff's sale into the registry of the court and preparation and entry of the above-described order, under which the taxes were paid to the county treasurer. Those reasons are not material.

The exclusive remedy of the appellant is given by the statute, which reads as quoted below. The recital in the order, entered March 20, 1937, authorizing payment from the proceeds in the registry of the court to the county treasurer, and that the payment was without prejudice to the right of the appellant to maintain any action or actions to recover all or any part of the money paid to the county treasurer, is not such written protest as is contemplated by the statute.

"In all cases of the levy of taxes for public revenue which are deemed unlawful or excessive by the person,

firm or corporation whose property is taxed, or from whom such tax is demanded or enforced, such person, firm or corporation may pay such tax or any part thereof deemed unlawful, under written protest setting forth all of the grounds upon which such tax is claimed to be unlawful or excessive; and thereupon the person, firm or corporation so paying, or his or its legal representatives or assigns, may bring an action in the supeperior court against the state, county or municipality by whose officers the same was collected, to recover such tax, or any portion thereof, so paid under protest: . . . ." Laws of 1931, chapter 62, p. 201, § 2, Rem. Rev. Stat., § 11315-2 [P. C. § 6882-190].

"Except as permitted by this act, no action shall ever be brought attacking the validity of any tax, or any portion of any tax:   Provided, however, That this section shall not be construed as depriving the defendants in any tax foreclosure proceeding of any valid defense allowed by law to the tax sought to be foreclosed therein." Laws of 1931, chapter 62, p. 204, § 7, Rem. Rev. Stat., § 11315-7 [P. C. § 6882-195].

It is a condition precedent to the maintenance of an action to recover the amount of alleged excessive or unlawful taxes paid by a taxpayer that the payment be made under written protest, setting forth all the grounds upon which such tax is claimed to be unlawful or excessive.  Even if, as contended by counsel for appellant, the county treasurer was apprised, on each and all of the occasions the question of payment of the taxes was discussed, of the grounds upon which appellant claimed the tax was unlawful, and if there were present in the mind of counsel for appellant (when he drafted the order of March 20, 1937, for payment of the taxes) the conviction that the tax was unlawful or excessive, that did not constitute the "written protest" which is a condition precedent to the maintenance of an action to recover illegal taxes.  *State ex rel. Yakima Amusement Co. v. Yakima County,* 192 Wash. 179, 73 P. (2d) 759.

If, at the time counsel for appellant presented its order *ex parte* to the superior court to pay the taxes to the county treasurer, appellant desired to protect its right to maintain an action for recovery of the alleged illegal taxes, appellant could then have filed a written protest, such as the statute requires, with the county treasurer. Instead of so doing, appellant filed, approximately two months after presentation of the order above described, a claim with the board of county commissioners under the provisions of the statute (Rem. Rev. Stat., § 4077 [P. C. § 1664a]), which requires, as a condition precedent to the maintenance of an action against the county on such claim, the presentation of the claim for damages against the county to the board of commissioners of the county within sixty days after the time when such claim for damages accrued.

Manifestly, this is not an action of that character. This is an action to recover the amount of alleged unlawful taxes paid by a taxpayer, and, even if void, it was voluntarily paid and cannot be recovered back for the reasons stated above. *Corwin Inv. Co. v. White*, 166 Wash. 195, 6 P. (2d) 607.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.