[No. 27438. Department One. August 12, 1939.]

THE LONGVIEW COMPANY et al., Appellants, v. H. D. RENNER, as Treasurer of Cowlitz County, et al., Respondents.[1]

[1]Reported in 93 P. (2d) 389.

*Donworth, Paul & Donworth* and *Joseph T. Woods,* for appellants.

*Shirley R. Marsh* and *H. Jerard Imus,* for respondents.

JEFFERS, J.—This is an appeal by plaintiffs, The Longview Company, a corporation, and The Long Bell Lumber Company, a corporation, from a judgment of dismissal, entered after a demurrer to plaintiffs' second amended complaint had been sustained and after a refusal on the part of plaintiffs to further plead.

The material facts, as shown by the second amended complaint, are as follows: Pursuant to Laws of 1917, chapter 130, p. 517, and acts amendatory thereof, there was organized and created diking improvement district No. 4 of Cowlitz county, Washington. An order establishing the district was entered November 5, 1917. Certain assessments for the purpose of retiring obligations incurred by the district for the construction and maintenance of a dike therein, were levied against the property in the district, and particularly against certain property of plaintiffs, who were then, and are now, the owners of approximately seventy-five per cent of the property. March 25, 1925, an order was entered by the county commissioners of Cowlitz county, consolidating district No. 4 and diking improvement districts Nos. 6, 7, and 8, in a district known as consolidated dik-

ing and improvement district No. 1 of Cowlitz county. The area of, and the improvements in, such consolidated district are materially different from the area of, and the improvements in, the districts therein consolidated, and the assessments levied on account of the construction and maintenance of the improvements in such consolidated district are materially different in amount and apportionment from assessments which were levied against the districts consolidated.

Plaintiffs have paid in full all of the assessments levied against the property which they own in the district, and the obligations of district No. 4 have been fully paid and retired, and there is now in the hands of defendants a surplus in the sum of $15,675.44. Plaintiffs allege that, on account of the assessments which they have paid in said district, they are entitled, respectively, to receive from such surplus, as their *pro rata* share, the sums of $10,972.41 and $1,019.30, for which demand has been made upon defendants, but payment has been refused; that the defendants have caused the surplus accruing in diking district No. 4 to be transferred to the maintenance fund of the consolidated district, and plaintiffs are informed and believe that defendants intend to exhaust such surplus by crediting the maintenance assessments of the consolidated district levied against each lot in district No. 4, until the credit equals the *pro rata* share of such surplus based upon the amount which each lot or parcel paid upon assessments of district No. 4.

Defendants interposed a demurrer to this complaint, which was sustained, and, plaintiffs refusing to further plead, a judgment of dismissal was entered on December 10, 1938, and this appeal followed.

Appellants contend the court erred in sustaining the demurrer to the complaint upon the ground that no

cause of action was stated therein and in dismissing the action.

Diking improvement district No. 4 will hereinafter be referred to as the district, and consolidated diking and improvement district No. 1 as the consolidated district.

The question presented is whether or not the owner of property in a diking improvement district, upon which all assessments have been paid, is entitled to a *pro rata* refund of the surplus money in the redemption fund of such district, all obligations of the district having been paid and retired, where such district has been consolidated with other districts into a diking improvement district under the provisions of Rem. Rev. Stat., § 4449 [P. C. § 1945-100] *et seq.* (Laws 1923, chapter 46, p. 131, § 14; Laws 1917, chapter 130, p. 517, § 1), the area, improvements, and assessments of the consolidated district being materially different from the area, improvements and assessments of the districts consolidated.

In considering this question, we must, in this case, accept as true the facts well pleaded in the complaint.

Appellants contend that to permit such a transfer of funds would be in violation of Art. I, §§ 3 and 16, of the state constitution, and the fourteenth amendment to the Federal constitution. They also contend that there is no statutory authority for such transfer. On the other hand, respondents contend such a transfer is authorized by Rem. Rev. Stat., §§ 4439 and 4439-1. They also contend that the assessments have been paid voluntarily and cannot be recovered back.

■ Rem. Rev. Stat., § 4449 [P. C. § 1945-100], authorizes the consolidation of diking improvement districts, whenever it shall appear to the board of county commissioners that such consolidation "will result in economy of the maintenance of such districts."

Rem. Rev. Stat., § 4453 [P. C. § 1945-104], defines the rights and powers of consolidated districts as follows:

"From the time of the entry of the order of consolidation, such consolidated district and its board of supervisors shall have all the rights and powers of, and be subject to all laws applicable to a district established under the provisions of this chapter, *and the several districts included in the consolidated district shall thereby be dissolved without any further proceedings. Notwithstanding such consolidation and dissolution, none of the outstanding bonds, warrants or other indebtedness of any district included in the consolidated district shall be affected thereby;* and all lands liable to be assessed to pay any of such bonds, warrants or other indebtedness shall remain liable to the same extent as if such consolidation had not been made; *and any and all assessments theretofore levied or made against any such lands shall be and remain unimpaired, and shall be collected in the same manner as if no such consolidation had been made.* The board of supervisors of the consolidated district shall have all the powers possessed at the time of the consolidation by the boards of supervisors of the several districts included in the consolidation to levy, assess and cause to be collected any and all assessments or charges against any of the lands within the several districts that may be necessary or required to provide for the payment of all the bonds, warrants and other indebtedness thereof. *Until such assessments shall have been collected and all indebtedness of the district paid, separate funds shall be maintained for each district as were maintained prior to the consolidation.*" (Italics ours.)

Rem. Rev. Stat., § 4439, is § 33, chapter 130, Laws of 1917, p. 544, and in so far as its reference to funds is concerned, is the same as Rem. Rev. Stat., § 4439-1 [P. C. § 1945-86]. These sections provide for the establishment of construction, redemption, and maintenance funds in the county treasury of any county in which a diking improvement district is established, and further provide that into the redemption fund shall

be paid all proceeds derived from assessments levied to pay cost of construction, and also all moneys, if any, remaining in the construction fund after the payment of all warrants drawn against it. It is further provided that, after the payment of interest and principal of all outstanding bonds and warrants, including temporary warrants, any balance thereafter remaining in the redemption fund shall be paid into the maintenance fund. Sections 4439 and 4439-1 are the only sections of the statute which refer to or authorize a transfer of funds of a diking improvement district, whether it be an original district or a consolidated district.

Respondents contend that these sections, when read in connection with § 4454 [P. C. § 1945-105] (Laws 1917, chapter 130, p. 519, § 6), authorize the transfer of any balance remaining in the redemption fund of district No. 4, to the maintenance fund of the consolidated district.

Rem. Rev. Stat., § 4454, *supra,* provides that, whenever two or more districts have been consolidated, all the provisions of law applicable to such districts prior to the consolidation shall apply to the consolidated district.

Section 4453, *supra,* provides that, upon consolidation, the several districts included in such consolidation shall be dissolved without further proceedings. However, this section further provides that none of the outstanding bonds, warrants, or other indebtedness of any district included in such consolidation shall be affected thereby. And it is also provided that, until ·all indebtedness of the districts has been paid, separate funds shall be maintained for each district, as were maintained prior to consolidation.

We think it is apparent, from §§ 4453 and 4454, *supra,* and from our decision in *Thurston County v. Clausen,* 118 Wash. 653, 204 Pac. 787, that the con-

solidated district may go forward from the point where the original districts left off. It is authorized to establish its construction, redemption, and maintenance funds, and to levy assessments against the property within the consolidated district, as may be necessary, and such as are permitted by statute, to meet the cost of construction and maintenance of the consolidated district. But it is also apparent, from § 4453, *supra,* that, in so far as the funds derived from assessments levied for the purpose of liquidating the obligations of the districts consolidated are concerned, such funds are not to become a part of the funds of the consolidated district, but are kept separate and apart therefrom, and in our opinion, become a trust fund for the purpose of liquidating the particular obligations for which the levies were made. It is apparent the consolidated district, as such, assumes no outstanding obligations of the districts in the consolidation, but the land in each district continues to be subject to assessment for its obligations incurred prior to consolidation, until such obligations are all paid.

It appearing herein, then, that all the obligations of district No. 4 have been liquidated, and that the district has been dissolved, and it further appearing that there is a balance in the redemption fund of such district, may the supervisor of the consolidated district authorize a transfer of such balance to the maintenance fund of the consolidated district?

We think, under the statutes, the consolidated district is a new entity, formed for the purpose of effecting a more economical operation of the districts included in the consolidation. Necessarily, the levies to be made to carry out this purpose must be determined by the board of supervisors of the new district, and such levies must be based upon the benefits to be received by all the land in such consolidated district. It is alleged in

the instant case that the assessments levied on account of construction and maintenance by the consolidated district are materially different in amount and apportionment from assessments which were levied against the lands in district No. 4.

We do not think §§ 4439 and 4439-1 were intended to authorize, or that they do authorize, a transfer of any balance remaining in the redemption fund of district No. 4, to the maintenance fund of consolidated district No. 1, but that such sections, when construed in connection with the other sections of the act relative to diking improvement districts, whether they be original districts or consolidated districts, only authorize a transfer of funds remaining in the redemption fund of a district, after all its obligations have been paid, to the maintenance fund of the particular district for which the assessments were levied. The statutes undoubtedly also contemplate a use for such funds, before any transfer can be made to the maintenance fund. In the instant case, district No. 4 having been dissolved and all its obligations having been paid, in so far as such district is concerned, there could be no further use for such funds for any purpose.

It seems to us that to place the interpretation upon these statutes contended for by respondents would be to say that funds received from assessments levied for a particular purpose by a district can be transferred to the maintenance fund of another district, to be used by the latter district for an entirely different purpose than that for which the funds were obtained. While we have serious doubts as to the right of the legislature to provide for a transfer such as contended for by respondents herein, in view of our conclusion that the statutes do not authorize such a transfer, we are not called upon and do not, in the instant case, determine whether or not such a provision would be a violation

of the constitutional right of a property owner who had paid assessments in a district included in a consolidation.

We are of the opinion that the funds remaining in the redemption fund of district No. 4 constitute a trust fund for the benefit of the property owners of district No. 4 who have paid their assessments, and that a court of equity, in the absence of some statutory provision therefor, has jurisdiction to require a *pro rata* distribution of such funds to such property owners. 19 C. J. 761, § 300; *Snowden v. Thompson,* 115 Ark. 587, 171 S. W. 919; *Grooms v. Board of Directors etc.,* 167 Tenn. 589, 72 S. W. (2d) 772. See, also, 5 McQuillin, Municipal Corporations (2d ed.), 914, § 2312; *Paving District No. 5 v. Fernandez,* 142 Ark. 21, 217 S. W. 795.

█ Respondents contend that the assessments herein, having been voluntarily paid, cannot be recovered back, and cite the case of *Pacific Finance Corp. v. Spokane County,* 170 Wash. 101, 15 P. (2d) 652, and cases therein cited, to sustain this proposition. We think the cited cases are authority only for the rule that void taxes voluntarily paid cannot be recovered back, and are not authority for the contention made herein. In the instant case, appellants are not seeking to recover funds illegally exacted, but are seeking to have money refunded which has been paid in excess of the amount actually needed for discharging the obligations for which the assessments were imposed. This we think they have a right to do. *Thibault v. McHaney,* 127 Ark. 1, 192 S. W. 183.

This action involves only the balance remaining in the redemption fund of district No. 4. However, in appellants' brief there is some intimation that, in arriving at the amounts which they claim as their *pro rata* share of the refund, the balance remaining in the maintenance fund of district No. 4 was included. In

order that there be no misunderstanding, we hold that appellants are entitled to a refund of $10,972.41 and $1,019.30, respectively, or so much of such amounts as shall be determined to be their *pro rata* share of the balance remaining in the redemption fund of district No. 4, based upon the assessments paid by appellants for construction purposes.

The judgment of the trial court is reversed.

BLAKE, C. J., STEINERT, ROBINSON, and MAIN, JJ., concur.

